# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

MANUEL OCASIO, JR.,        )
       Plaintiff,      )
                         )
     v.                    )     CAUSE NO.: 2:13-CV-303-PRC
                         )
OFFICER DALE E. TURNER,   )
       Defendant.     )

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DE 15], filed by Defendant Dale E. Turner on February 25, 2014. For the reasons set forth below, the Court grants in part and denies in part the Motion.

## PROCEDURAL BACKGROUND

On August 30, 2013, Plaintiff Manuel Ocasio, Jr. filed a Complaint against Defendant Dale E. Turner, a Senior Trooper with the Indiana State Police, bringing claims under 42 U.S.C. § 1983 for false imprisonment, excessive force, illegal search and seizure, and malicious prosecution.[1] The claims arise out of a traffic stop by Turner on April 13, 2012, that led to the arrest and prosecution of Ocasio in state court on charges of resisting law enforcement and battery on a law enforcement officer. Turner filed an Answer on November 27, 2013, and an Amended Answer and Affirmative Defenses on March 4, 2014. On February 25, 2014, Turner filed the instant Motion for Judgment on the Pleadings. Ocasio filed a response on March 18, 2014, and Turner filed a reply on March 28, 2014.

---

[1] Although the Complaint identifies Dale E. Turner with the title "officer," he is identified as "Senior Trooper Turner" in the Answer and Amended Answer as well as in the Information in the underlying state case.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). A Rule 12(c) motion is evaluated by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)). Such a motion tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

To survive the motion, the complaint must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The United Sates Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement

to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679; *McReynolds*, 694 F.3d at 885.

Generally, the Court considers only the pleadings, which "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, the Court may take judicial notice of matters of public record. *Morris v. Huebsch*, 12-CV-319, 2014 WL 801448, at *1 (W.D. Wis. Feb. 28, 2014) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). Under the Federal Rules of Evidence, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Taking judicial notice of public records does not convert the Rule 12(c) motion into a motion for summary judgment. *See Gen. Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

Turner asks the Court to take judicial notice of the state court record in the underlying criminal case. Ocasio argues that judicial notice of the facts recounted in the state court Information by Turner is inappropriate, reasoning that, because Ocasio disputes the facts as presented by Turner, the facts in the Information are not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." However, Ocasio pleaded guilty "as charged," which included the facts set forth in the charging document, the Information.

"Admissions in a guilty-plea hearing, being judicial admissions, bind the defendant in subsequent proceedings . . . ." *United States v. Evans*, 576 F.3d 766, 770 (2009); *see also Scholes v. Lehman*, 56 F.3d 750, 762 (7th Cir. 1995) ("Admissions—in a guilty plea, as elsewhere—are admissions; they bind a party; and the veracity safeguards surrounding a plea agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition." (citing *Country Mut. Ins. Co. v. Duncan,* 794 F.2d 1211, 1215 (7th Cir. 1986))). Under Indiana law, a state court can accept a defendant's guilty plea only if the court determines that the plea is voluntarily and there is a sufficient factual basis to support the plea. *Rhodes v. State*, 675 N.E.2d 698, 700 (Ind. 1996) (citing Ind. Code § 35-35-1-3); *Norris v. State*, 896 N.E.2d 1149, 1152 (Ind. 2008) ("Indiana jurisprudence has insisted that a factual basis must exist for a guilty plea, and that a judge may not accept a guilty plea while a defendant claims actual innocence." (citing *Ross v. State,* 456 N.E.2d 420, 423 (Ind. 1983))).

Thus, for purposes of the *Heck* analysis below, Ocasio cannot now dispute the facts set forth in the Information that formed the basis of the charge of resisting law enforcement to which he pleaded guilty "as charged." The Court may take judicial notice of those facts as well as the documents in the state court record. *See Nolan v. Thomas*, 11 CV 1565, 2011 WL 4962866, at *2-3, *2 n. 3 (N.D. Ill. Oct. 19, 2011) (taking judicial notice of the facts that formed the basis of the plaintiff's guilty plea (citing *Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (recognizing that the Court is entitled to take judicial notice of matters in the public record)). The Court takes judicial notice of the indisputable fact that the state court documents exist, that they say what they say, and that they have legal consequences. *See Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012)). The Court is not relying on these documents as proof of

disputed facts, given that Ocasio accepted these facts by pleading guilty "as charged." *See United States v. Cohen*, 08-3282, 2012 WL 505918, at *5-6 (C.D. Ill. Feb. 15, 2012) ("[T]he existence of public records such as court documents cannot be used to establish any disputed facts." (citing *Indep. Trust Corp.*, 665 at 943).[2]

Accordingly, the Court takes judicial notice of the state court record in *State v. Ocasio*, Case NO. 45D12-1204-CM-00419 (Lake County, Ind.), including the Order of August 12, 2013, the Plea Agreement, the Order of April 20, 2012, the Informal Probation Conditions, the Information, and the Probable Cause Affidavit.

## FACTUAL BACKGROUND

Based on the allegations of the Complaint, on April 13, 2012, Ocasio, a duly licensed commercial truck driver, was driving on Interstate Highway 65 in Lake County, Indiana. At 7:45 p.m., Turner conducted a traffic stop of Ocasio's vehicle. During the stop, Turner placed part of his person inside the cabin of Ocasio's vehicle. Turner placed Ocasio under arrest. Turner sprayed Ocasio with a chemical weapon spray. Ocasio alleges that Turner "used unreasonable and unnecessary physical force to effectuate the arrest." (Compl. ¶ 12).

Ocasio also alleges in the Complaint that Turner "maliciously and without probable cause instituted or caused to be instituted charges against [him] for aggravated battery." *Id*. at ¶ 13. However, the state court record does not show a charge of aggravated battery. Rather, on April 20,

---

[2] The two cases cited by Ocasio are inapposite as neither addresses facts adopted by the plaintiff as part of a plea agreement; rather, both deal with findings of fact by another court. *See Wright v. Charles Thompson*, 4:12-CV-10, 2012 WL 2401532, at *1 (S.D. Ind. June 25, 2012) (denying motion to take judicial notice of facts established by the court of appeals in the underlying criminal matter (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)); *Facebook, LLC v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 772 (N.D. Ill. 2011) (noting that statements by a party made in one civil lawsuit are not a judicial admission in another (citing *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996) (finding that a deposition statement made in a prior lawsuit was an "admission" but not a "judicial admission" and could be used only as evidence in the subsequent lawsuit)).

2012, Ocasio was charged by Information with resisting law enforcement and battery on a law enforcement officer, both class A misdemeanors. As for the charge of resisting law enforcement, the Information charges:

> Manuel Ocasio Jr. did knowingly, intentionally by force, resist, obstruct or interfere with a law enforcement officer by refusing to comply with orders to exit the truck, attempted to lock himself in his cab, and attempted to retreat into his sleeper berth for unknown means while said officer was lawfully engaged in the execution of his duties as an officer, contrary to section 35-44-3-3(1) of the Indiana Code.

(Def. Br., Exh. A, 7). As for the charge of battery on a law enforcement officer, the Information charges: "Manuel Ocasio, Jr. did knowingly or intentionally touch S/Trp Turner a law enforcement officer, in a rude, insolent or angry manner, while the said officer was engaged in the execution of his official duty, contrary to section 35-42-2-1(a)(1) of the Indiana Code." *Id*.

The Information sets forth the following factual basis for the charges. Ocasio was driving south on Interstate Highway 65 when Turner observed him traveling in the passing lane when no vehicles were present in the right lane. Turner activated his emergency lights, but Ocasio did not yield. Turner then activated his siren and pulled next to the truck's cab, at which time Ocasio pulled to the outer berm of the ramp to the southbound state of Indiana truck scales and came to a stop. Turner stepped up to talk to Ocasio, who provided his license. However, when Turner stepped down and instructed Ocasio to exit the truck, Ocasio attempted to shut his driver's door. Turner prevented him from doing so and stepped back onto the truck.

When Ocasio then moved toward the cab's sleeper compartment, Turner ordered him to turn around and show his hands. Ocasio refused. Turner ordered him to show his hands again, attempting to turn Ocasio to see his hands. A struggle ensued when Ocasio refused, with Ocasio throwing his shoulder back and moving further back into the sleeper compartment. Turner ordered him out and

sprayed Ocasio with a chemical spray. Ocasio then attempted to close the door with Turner standing

between the door and the door jam. Turner again ordered him out of the truck and sprayed Ocasio

a second time as he swung and kicked toward Turner. Another Indiana State Police trooper arrived,

and Ocasio got out of the truck. Ocasio became combative again as the officers attempted to

handcuff him. He was then held standing until an ambulance arrived to take him to a local hospital

for medical clearance.

On August 9, 2013, after a jury trial but before the state court judge accepted the jury's

verdict, Ocasio pleaded guilty to resisting law enforcement "as charged" in the Information. The

battery on a law enforcement officer charge and the two related infractions (failure to yield and truck

in restricted lane) were dismissed pursuant to the plea agreement. The state court judge entered

judgment of conviction on the plea of guilty on August 12, 2013.[3]

## ANALYSIS

Defendant Senior Trooper Dale E. Turner asks the Court to enter judgment on the pleadings

on all of Plaintiff Manuel Ocasio Jr.'s § 1983 claims as barred by his conviction for resisting law

enforcement, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). Turner argues that, because

Ocasio pleaded guilty to resisting law enforcement "as charged" in the Information, he admitted that

Turner was "lawfully engaged in the execution of his duties," an element of the state law charge of

resisting law enforcement, and, thus, his constitutional claims are barred under *Heck* as long as his

---

[3] In the August 12, 2013 Order, the state court judge recognized that the jury returned verdicts of guilty of resisting law enforcement, unsigned as to guilty of battery on law enforcement, unsigned as to not guilty on resisting law enforcement, not guilty of battery on law enforcement, and not liable on the infractions of truck in restricted lane and failure to yield to an emergency vehicle. *See* (Def. Mot., Exh. A.b). The court then noted that, following the jury's dismissal, the court advised the parties that no legal instructions were tendered to the jury pertaining to the charged offenses pursuant to the charging Information. *Id.* The parties discussed the matter privately with their clients, and, following a brief recess, the attorneys met with the judge in chambers to report that Ocasio had accepted the guilty plea proposal. *Id.*

conviction stands. Turner further argues that the malicious prosecution claim cannot survive because the underlying criminal proceedings did not terminate in Ocasio's favor. Ocasio responds that he has pleaded a plausible cause of action for each of his claims.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)). Ocasio brings his § 1983 claims of false imprisonment, excessive force, and illegal search and seizure under the Fourth Amendment to the United States Constitution, which is applicable to state action through the Due Process Clause of the Fourteenth Amendment. The § 1983 malicious prosecution claim does not specify the constitutional or federal right on which the claim is based but alleges that Ocasio suffered damages, including the value of his lost liberty, exposure to public scandal and disgrace, damage to his reputation, mental and emotional suffering, humiliation, embarrassment, and anguish. The parties do not dispute that Turner was acting under color of state law.

Under *Heck v. Humphrey*, a plaintiff who has been convicted of a crime cannot seek damages under § 1983 for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid" as long as the conviction stands. 512 U.S. at 486-87. Thus, "the district court must consider whether a judgment in favor of the plaintiff [in the § 1983 case] would *necessarily* imply the invalidity of his conviction or sentence." *Id.* at 487 (emphasis added); *see also Skinner v. Switzer*, 131 S.Ct. 1289, 1298 (2011) (discussing the meaning and importance of "necessarily imply") (citing *Nelson v. Campbell*, 541 U.S. 637, 647 (2004)). If the answer is yes, the § 1983

complaint must be dismissed unless the plaintiff can show that the conviction or sentence has already been invalidated. *Id.* However, "if the [§ 1983] claim, even if successful, will *not* demonstrate the invalidity of the conviction, then the § 1983 action should be allowed to proceed." *Helman v. Duhaime*, 742 F.3d 760, 762 (7th Cir. 2014) (citing *Heck*, 512 U.S. at 487; *Skinner*, 131 S.Ct. at 1298).

*Heck* does not inevitably apply to Fourth Amendment claims challenging the plaintiff's arrest rather than the conviction, such as the claims in this case. *See Easterling v. Moeller*, 334 F. App'x 22, 24 (7th Cir. 2009) (recognizing that a defendant who pleads guilty to a charge is often not precluded by *Heck* from subsequently raising a Fourth Amendment claim because the conviction did not depend on evidence allegedly obtained by unlawful conduct but rather on the defendant's plea, yet not foreclosing the possibility of a civil plaintiff pleading himself "into a *Heck* bar by insisting on facts inconsistent with his guilt"); *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010) (recognizing that, regarding an excessive force claim, a defendant convicted of resisting arrest could still complain that officers used unnecessary and unreasonable force during or after the arrest); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (noting that . . . doctrines such as inevitable discovery, independent source, and harmless error could allow a conviction to stand despite illegal conduct).

Rather, to determine whether the Fourth Amendment claim is barred by *Heck*, a court must analyze the relationship between the civil claim and the charge on which the plaintiff was convicted:

> [A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction: 'It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.'

*McCann v. Neilsen*, 466 F.3d 619, 621-22 (7th Cir. 2006) (quoting *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)); *see also Helman*, 742 F.3d at 762 (dismissing a Fourth Amendment excessive force claim that, as pleaded, necessarily implied the invalidity of the conviction for resisting law enforcement); *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008) ("A person convicted of resisting arrest or assaulting a police officer, however, is not precluded from bringing a § 1983 action 'for excessive force stemming from the same confrontation' so long as the § 1983 case does not undermine the validity of the criminal conviction" (internal citation omitted)); *VanGilder*, 435 F.3d at 691 ("To properly apply *Heck*'s bar against certain damage actions, a district court must analyze the relationship between the plaintiff's § 1983 claim and the charge on which he was convicted.").

The United States Supreme Court explained that, under *Stone v. Powell*, 428 U.S. 465, 482 (1976), "Fourth Amendment violations are *generally* not cognizable on federal habeas, but they *are* cognizable when the State has failed to provide the habeas petitioner 'an opportunity for full and fair litigation of a Fourth Amendment claim.'" *Wallace v. Kato*, 549 U.S. 384, 395 n. 5 (2007). Thus, the Supreme Court went on to recognize that "[a]t the time of a Fourth Amendment wrong, and at the time of conviction, it cannot be known whether a prospective § 1983 plaintiff will receive a full and fair opportunity to litigate his Fourth Amendment claim. It thus remains the case that a conflict with the federal habeas statute is possible, that a Fourth Amendment claim can necessarily imply the invalidity of a conviction, and that if it does it must, under *Heck*, be dismissed." *Id.*

In *Heck*, the Supreme Court explained that its holding applies not only to a § 1983 claim for "damages directly attributable to conviction or confinement" but also to a § 1983 claim "whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was

wrongful." 512 U.S. at 487 n.6. As an example of such a case, the Supreme Court offered a state defendant, like Ocasio, convicted of and sentenced for the crime of resisting arrest, which the Supreme Court defined as "intentionally preventing a peace officer from effecting a *lawful* arrest." *Id*. The hypothetical state defendant then brings a damages action under § 1983 for a violation of his Fourth Amendment right to be free from unreasonable seizures. *Id*. The Supreme Court explained that, in order to prevail on such a claim, the individual would have to "negate an element of the offense to which he has been convicted," and, "regardless of the state law concerning res judicata, the § 1983 action will not lie." *Id*. (internal citation omitted).

The definition of resisting law enforcement under Indiana law mirrors that relied on in *Heck*: "A person who knowingly or intentionally . . . forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is *lawfully engaged* in the execution of [his] duties . . . commits resisting law enforcement . . . ." Ind. Code § 35-44-3-3 (emphasis added).[4] A required element of the crime–and the one central to this Court's *Heck* analysis–is that the officer was lawfully performing his duties. *See K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013) (recognizing that the five elements of resisting law enforcement include that "the officer was lawfully engaged in the execution of the officer's duties").

In *Briggs v. State*, the Indiana Court of Appeals reversed the conviction for resisting law enforcement because the police officers' conduct in arresting Briggs on a "hunch" that he had a weapon amounted to an unreasonable seizure and, thus, the officers were not "lawfully engaged in the execution of their duties." 873 N.E.2d 129, 133-34 (Ind. Ct. App. 2007); *see also Shoultz v. State*, 735 N.E.2d 818, 824 (Ind. Ct. App. 2000) (reversing a conviction for resisting law

---

[4] This is the version of the Indiana Code in effect at the time of Ocasio's offense. That provision, which was repealed as part of a comprehensive recodification of Indiana law, can now be found at Indiana Code § 35-44.1-3-1(a).

enforcement when the arresting officer used unconstitutionally excessive force in effecting the arrest and thus was not lawfully engaged in the execution of his duties);[5] *Adkisson v. State*, 728 N.E.2d 175, 178 (Ind. Ct. App. 2000) (reversing a conviction for resisting law enforcement because the warrantless arrest in the plaintiff's home was not in a public place and no exigent circumstances existed and, thus, the officer was not lawfully engaged in the execution of his duties); *Casselman v. State*, 472 N.E.2d 1310, 1318 (Ind. Ct. App. 1985) (reversing a conviction for resisting law enforcement when the arresting officer, who was serving a writ to effect a civil arrest, entered the plaintiff's home without permission and, thus, the officer was not lawfully engaged in the execution of his duties).[6]

With these principles in mind, the Court considers each of Ocasio's claims in turn.

---

[5] Ocasio argues that *Shoultz* is actually contrary to Turner's position because the case recognizes that "[t]he general rule in Indiana is that 'a private citizen may not use force in resisting a peaceful arrest by an individual who he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful. Thus, under that rule it is immaterial whether Shoultz' purported arrest for resisting law enforcement was supported by probable cause." 735 N.E.2d 818, 823 (Ind. Ct. App. 2000). But, Ocasio fails to cite the following paragraph of *Shoultz*: "However, in a circumstance such as this, the rule that a citizen may not resist a peaceful, though illegal, arrest was not 'intended as a blanket prohibition so as to criminalize any conduct evincing resistance where the *means used* to effect an arrest are unlawful.'" *Id.* (citing *Casselman v. State*, 472 N.E.2d 1310, 1315 (Ind. Ct. App. 1985); *Adkisson v. State*, 728 N.E.2d 175, 178 (Ind. Ct. App. 2000)). Moreover, Ocasio was convicted under the statute, which requires that the officer have been "lawfully engaged."

[6] The Indiana Supreme Court has since held that "the right to reasonably resist an unlawful police entry into a home is no longer recognized under Indiana law." *Barnes v. State*, 946 N.E.2d 572, 577 (Ind. 2011). Thus, in *Barnes*, the officers' entry into his apartment did *not* negate an element of the crime and his conviction for resisting law enforcement was sustained. *Id.* at 578.

*1.      Illegal Search and Seizure*

Ocasio does not challenge the initiation of Turner's traffic stop.[7] Rather, in Count IV of the Complaint, Ocasio alleges that Turner's actions *during* the stop were without probable cause or any other legal basis. *See* Compl. ¶¶ 9, 10, 29-31 (Facts; Count IV). Thus, whether Ocasio's Fourth Amendment claim against Turner for illegal search and seizure is barred by *Heck* turns on whether the claim necessarily implies the invalidity of Ocasio's conviction for resisting law enforcement by negating an element of the crime. *See Van Gilder*, 435 F.3d at 691-92 (discussing *Nelson v. Campbell*, 541 U.S. 637, 647 (2004)). The Court finds that it does.

In his Complaint, Ocasio alleges that, "[d]uring the stop, without probable cause or any other legal basis, Defendant Turner placed a part of his person inside the cabin of Plaintiff's vehicle." Compl. ¶ 9. In his brief, Ocasio similarly focuses on Turner's "entry" into the cab of the truck. (Pl. Br. 6). Ocasio then argues that, because the illegal search and seizure took place during the course of the stop and not *after* or pursuant to his arrest, his claim is not barred by *Heck*. However, the facts to which he pleaded guilty demonstrate that Turner did not place his body inside the cab until Ocasio began resisting Turner's lawful attempts to have Ocasio exit the cab as part of the stop. *See*

_____

[7] In paragraph 8 of the Complaint, Ocasio alleges, "At approximately 7:45 p.m., Defendant Turner conducted a traffic stop of Plaintiff's vehicle." Compl. ¶ 8. In his response brief, Ocasio writes, "On or about April 13, 2012, the defendant lawfully commenced a traffic stop on Ocasio, a commercial truck driver." (Pl. Resp. 2); *compare Chriswell v. Vill. of Oak Lawn*, 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013) (denying the motion to dismiss the illegal seizure claim based on the officer's initial stop because there was a factual dispute as to whether the plaintiff had committed any violation at the time she was pulled over). The United State Supreme Court recently reiterated:

> The Fourth Amendment permits brief investigative stops–such as the traffic stop in this case–when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." The "reasonable suspicion" necessary to justify such a stop "is dependent upon both the content of information possessed by police and its degree of reliability." The standard takes into account "the totality of the circumstances—the whole picture."

*Navarette v. California*, — S.Ct. —, —, 2014 WL 1577513, at *3 (2014) (internal citations omitted).

*Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (holding that a police officer may, as a matter of course, order the driver of a lawfully stopped car to exit his vehicle).[8]

The charging facts, to which Ocasio pleaded guilty, detail Turner's basis for initiating the traffic stop (Ocasio's travel in the left-hand passing lane as well as his failure to pull over when Turner activated his lights); Ocasio's refusal to come out of his truck at Turner's request, Ocasio's attempt to close the cab door, and Ocasio's movement back into the cab's sleeper compartment; Turner's return to the steps of the cab to block the door from being closed, the orders to Ocasio to show his hands, and Ocasio's second attempt to reach back into the sleeper compartment; the subsequent sequence of events leading to Turner's use of the chemical spray; and, then, once the other officer had arrived, the arrest of Ocasio.

Like the Supreme Court's example in *Heck*, if Ocasio is successful on his claim that the search and seizure by Turner was illegal (i.e. without probable cause), then Turner, by definition, was not "lawfully engaged in the execution of his duties" when he placed his body inside the cab after Ocasio resisted by refusing to exit the cab and attempting to shut the door and retreat inside the cab. Such a finding would negate an element of the crime of resisting law enforcement to which Ocasio pleaded guilty and necessarily challenge an element of his conviction. Under *Heck*, until his conviction for resisting law enforcement is reversed, expunged, or invalidated by a state tribunal or called into question by a federal habeas writ, Ocasio cannot seek damages for illegal search and seizure. *See, e.g.*, *McCoy v. City of Fort Wayne*, 1:11-CV-18, 2012 WL 1714355, at *4-5 (N.D. Ind. May 15, 2012) (granting summary judgment on an illegal search and seizure claim based on assertions that the officers fabricated the evidence against him and made false statements in the

---

[8] To the extent that Ocasio's illegal search and seizure claim is also challenging his arrest, the Court addresses that claim in the following section on false imprisonment/false arrest.

search warrant and probable cause affidavits because if that claim was successful, the evidence gathered from the search should have been inadmissible, undermining his conviction for dealing in cocaine or a narcotic drug that was premised on that evidence).

Therefore, the Court grants the Motion for Judgment on the Pleadings as to the illegal search and seizure claim (Count IV) and orders that the claim is dismissed without prejudice. See *White v. Dowd*, 1:13-CV-350, 2014 WL 1324336, at *2 (S.D. Ind. Mar. 28, 2014) (citing *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (recognizing dismissal of *Heck*-barred claims is without prejudice)).

*2.      False Imprisonment/False Arrest*

In Count I, titled "false imprisonment," Ocasio alleges that Turner intentionally caused him to be arrested and imprisoned without probable cause or other justification in violation of the Fourth Amendment. In his brief, Ocasio treats this claim as one for false arrest. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (describing false arrest as a species of false imprisonment).

As explained above, a Fourth Amendment false arrest claim is not automatically *Heck*-barred by a subsequent conviction for the same offense, but, in those cases in which the grounds for the conviction flow from the same facts underlying the allegations of false arrest, the claim is barred. *See Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) (noting that a finding of wrongful arrest does not invalidate convictions that can be supported by other witnesses and evidence (citing *Heck*, 512 U.S. at 486-87)); *Puch v. Vill. of Glenwood, Ill.*, No. 05 C 1114, 2012 WL 2502688, at *4 (N.D. Ill. June 27, 2012) (granting judgment on the pleadings on the false arrest claim because probable cause is an absolute bar to a § 1983 claim for false arrest, the plaintiff had been convicted based on the testimony of the arresting officer, which was the same testimony supporting probable cause, and,

thus, plaintiff could not prevail on the false arrest claim without undermining the criminal conviction); *Baker v. McCarthy*, No. 13C5232, 2014 WL 1409414, at *3 (N.D. Ill. Apr. 11, 2014) (recognizing that *Heck* can bar a Fourth Amendment claim when the civil rights claim was an element at issue in the state criminal conviction).

In his brief, Ocasio identifies two points in time for which he may allege false arrest: (1) the initial stop and (2) the time period when he was "resisting arrest" pursuant to his plea agreement. (Pl. Br. 6). Ocasio argues that officers are not permitted to illegally seize a person "for no reason" and then create a scenario in which the individual resists the arrest so that the officer is not liable for the purportedly unlawful arrest. (Pl. Br. 6-7) (citing *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 637 (7th Cir. 2008)). Ocasio fails to acknowledge two facts. First, he is not challenging the initial traffic stop. Second, the facts set forth in the Information, to which Ocasio pleaded guilty "as charged," set out the events that provide the probable cause for the arrest on the charges of resisting law enforcement.

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Virginia v. Moore*, 553 U.S. 164, 171 (2008) (affirming a long line of cases holding that, when an officer has probable cause to believe a person has committed even a minor crime in his presence, the arrest is constitutionally reasonable); *Jackson v. Parker*, 627 F.3d 634, 638-40 (7th Cir. 2010) (applying *Moore* and *Atwater* to find no Fourth Amendment violation when the officer had probable cause to arrest the defendant after observing him driving a vehicle that was prohibited from using the roadway).

Accordingly, the existence of probable cause is an absolute bar to a claim of false arrest or false imprisonment under § 1983 or Indiana law. *See Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2011) (noting that the presence of even "arguable probable cause" for the arrest presents an absolute bar to a claim for unlawful arrest and false imprisonment under § 1983 (citing *Biddle v. Martin*, 992 F.2d 673, 678 (7th Cir. 1993); *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010)); *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (recognizing the requirement of an absence of probable cause to establish a false imprisonment claim under § 1983 or Indiana law). The probable cause must have existed at the time of the arrest. *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008) (recognizing that probable cause must exist "at the time of the arrest"); *Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965, 974 (N.D. Ind. 2010) (same).

Ocasio could not have been convicted of resisting law enforcement but for the facts in the Information. Ocasio pleaded guilty to those facts "as charged." He cannot now challenge them. Those facts, which occurred in Turner's presence, provide the probable cause for the arrest for and charge of resisting law enforcement. If Ocasio proves in this case that he did not resist Turner, that evidence will necessarily impugn the validity of his conviction for resisting law enforcement, which required that Turner be "lawfully engaged." *See Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013) (finding a Fourth Amendment claim of unreasonable seizure to be barred by *Heck* when the plaintiff had pleaded guilty to aggravated battery of a police officer because the officer's testimony of what took place in his presence provided proof of both probable cause and the plaintiff's guilt).

Ocasio argues that his claim of false arrest based on the other charge–battery on a law enforcement officer–should not be dismissed because he was not convicted of that charge. He is incorrect as the existence of probable cause for the traffic stop and for the arrest on the charge of resisting law enforcement also bar Ocasio's claim for false imprisonment on the charge of battery on a law enforcement officer because the charges are closely related. "[E]ven if probable cause does not exist for the crime charged, proof of probable cause to arrest the plaintiff on a closely related charge is also a defense." *Kelley v. Myler*, 149 F.3d 641, 647-48 (7th Cir. 1998) (citing *Biddle*, 992 F.3d at 676); *see also Fox v. Hayes*, 600 F.3d 819, 837 (7th Cir. 2010) ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect."); *Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003) (rejecting the plaintiff's "parade of horribles" argument).

Therefore, because a judgment in favor of Ocasio on his claim for false arrest would impugn the validity of his conviction, the Court grants the Motion for Judgment on the Pleadings on the claim of false arrest/false imprisonment. *See Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2013) (finding that, because the plaintiff was challenging his arrest on the basis that he never drove the vehicle, that proof would necessarily impugn the validity of the conviction that he drove the vehicle while intoxicated). The Court orders that the claim for false arrest/false imprisonment (Count I) is dismissed without prejudice. *See White*, 2014 WL 1324336, at *2 (citing *Perez*, 57 F.3d at 505 (dismissal of *Heck*-barred claims is without prejudice)).

*3.     Excessive Force*

In Count II of the Complaint, titled "Excessive Force," Ocasio alleges that the actions of Turner constituted unreasonable, unjustifiable, and excessive force against him in violation of the Fourth Amendment. Turner argues that Ocasio's excessive force claim challenges the validity of his conviction for resisting law enforcement and must be dismissed pursuant to *Heck*. Ocasio responds that nothing in his plea agreement implies that his resistence merited the amount of force used by Turner against him. The Court finds that *Heck* does not bar Ocasio's claim that, once Ocasio began resisting Turner, Turner used excessive force during and after the arrest.

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "A police officer's use of force is unconstitutional if, 'judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Payne v. Pauley,* 337 F.3d 767, 778 (7th Cir. 2003) (quoting *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir. 1987)).

Recently in *Helman*, the Seventh Circuit Court of Appeals reaffirmed that, when a plaintiff has been convicted of resisting law enforcement, the plaintiff can only proceed with a § 1983 excessive force claim "to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction." 742 F.3d at 762 (citing *Evans*, 603 F.3d 362). Thus, when determining whether *Heck* requires dismissal of the excessive force claim, a court "must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of [the plaintiff's] conviction." *Id*. Both *Helman* and *Evans* were appealed from federal

district courts in Indiana, and both involved a plaintiff who had been convicted of the Indiana crime of resisting law enforcement.

In *Evans v. Poskon*, the court considered three different contentions related to Evans' excessive force claim based on the police entering Evans' home on the belief that he was attempting to strangle someone and then arresting him after a struggle. 603 F.3d at 363. Evans brought a § 1983 action for excessive force, alleging that the officers violated the Fourth Amendment by using excessive force both during and after the arrest. He contended (1) that he did not resist being taken into custody, (2) that the police used excessive force to effect custody, and (3) that the police beat him severely even after reducing him to custody. *Id*. at 364. The court held that Evans could not maintain the § 1983 claim based on the first assertion–that he did not *resist* being taken into custody–because such a showing would be incompatible with his conviction for resisting law enforcement. *Id*.; *see also Evans v. State*, 855 N.E.2d 378, 383 (Ind. Ct. App. 2006) (noting that Evans was convicted of the class D felony of resisting law enforcement). But, the court held that Evans could proceed on the second and third claims that the police used excessive force in effecting custody as well as after he was in custody because those claims are not inconsistent with his conviction for resisting law enforcement. *Id*. (citing *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008); *VanGilder*, 435 F.3d at 692; *Dyer v. Lee*, 488 F.3d 876, 881 (11th Cir. 2007)).

The court in *Evans* did not discuss the elements of the underlying crime of resisting law enforcement and whether Evan's claim of excessive force was inconsistent with the element of the crime of resisting law enforcement that the officer be "lawfully engaged." Likewise, the courts in *VanGilder* or *Gilbert*, on which *Evans* relies, did not discuss the elements of the crime of resisting law enforcement.

In *VanGilder*, also an Indiana case in which the plaintiff had pleaded guilty to and was convicted of resisting law enforcement, the Seventh Circuit Court of Appeals found that the civil action for excessive force did not imply the invalidity of the conviction. 435 F.3d at 692. In *VanGilder*, the plaintiff did not deny that he had resisted the officer's orders nor did he challenge the factual basis presented at his change of plea hearing. *Id*. Rather, the plaintiff alleged that the officer's response to his resistence was not objectively reasonable. *Id*. The court reasoned:

> Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages. Put another way, police subduing a suspect could use as much force as they wanted–and be shielded from accountability under civil law–as long as the prosecutor could get the plaintiff convicted on a charge of resisting. This would open the door to undesirable behavior and gut a large share of the protections provided by § 1983.

*Id*.

*Gilbert v. Cook*, an Illinois case, concerned the plaintiff's continuing insistence that he did not punch a prison guard, which was inconsistent with the prison disciplinary tribunal's finding that the plaintiff had punched a guard. 512 F.3d at 901.[9] The court reasoned that "[a] contention that a guard struck back after being hit is compatible with *Heck*. Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong." *Id*. The Seventh Circuit Court of Appeals held that "*Heck* [ ] does not affect litigation about what happens after the crime is completed." *Id*. The court explained, "Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing *Heck* . . . ." *Id*. (citing *VanGilder*, 435 F.3d

---

[9] In *Edwards v. Balisok*, 520 U.S. 641 (1997), the United States Supreme Court extended the doctrine established in *Heck v. Humphrey* to the decisions of prison disciplinary tribunals.

692). Based on the position asserted by Gilbert in his § 1983 case that he "either did or did not hit a guard," the court found that his claim did not "necessarily" imply the invalidity of his conviction. *Id.* at 902. The court explained that the trial judge could have instructed the jury that Gilbert struck the first blow (consistent with the tribunal's finding), that any statements to the contrary should be ignored, and that the question for the jurors was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner. *Id.*

Recently in *Helman*, to determine if the excessive force claim was barred under *Heck*, the court considered the element of the crime of resisting law enforcement that requires the officer to be "lawfully engaged." The theory Helman pursued on his § 1983 claim was that he did not attempt to draw his weapon on the police until *after* shots were fired at him. 742 F.3d at 762-63. The court found that theory to be inconsistent with his conviction for resisting law enforcement under Indiana Code § 35-44-3-3 and, thus, barred by *Heck*. The Court reviewed the statute and Indiana case law interpreting it, as this Court did above, noting the holding that an "officer is not 'lawfully engaged in the performance of his duties' if he is employing excessive force, and therefore a person who reasonably resists that force cannot be convicted under that provision." *Helman*, 742 F.3d at 763 (citing *Shoultz*, 735 N.E.2d at 823-25). The court reasoned that Helman would not have been criminally liable under the statute if he had attempted to draw his weapon only *after* the police had fired at him; therefore, his conviction under that statute, which was by plea agreement, "necessarily entails a finding that at the time he drew his weapon, he did not face the use of excessive force by the officers." *Id*. The court explained that "[i]t would have been objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner, and therefore the officers would have been employing excessive force if they did so."

*Helman*, 742 F.3d at 763 (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011)).[10]

This Court then must consider the factual basis of Ocasio's excessive force claim and determine whether it necessarily implies the invalidity of his conviction for resisting law enforcement. In paragraph 11 of the Complaint, Ocasio alleges that, "[w]ithout any legal basis, Defendant Turner sprayed the Plaintiff with his chemical weapon spray." Compl. ¶ 11. In paragraph 12 of the Complaint, he alleges, "During the traffic stop, Defendant Turner used unreasonable and unnecessary physical force to effectuate the arrest of Plaintiff." Compl. ¶ 12. In the facts in the Information, to which Ocasio adopted through his guilty plea, Turner sprayed Ocasio with the chemical spray while Ocasio was in the truck after Ocasio attempted to evade Turner and struggled with Turner.

In the instant motion, Turner argues that, if Turner's response to this struggle was reasonable, then Ocasio has no excessive force claim. Or, Turner argues that, if as Ocasio contends, the force was unreasonable and excessive, then Ocasio would not have been criminally liable under the resisting law enforcement statute. But the timing of Turner's "lawfully engaged" analysis is misplaced. The relevant point in time for analyzing whether Turner was "lawfully engaged" for purposes of the conviction for resisting law enforcement is prior to the point that Ocasio began resisting, not *after* Ocasio's resistence began.

---

[10] In *Shoultz*, the court found that the force used by the officer was objectively unreasonable and unconstitutionally excessive under the Fourth Amendment standard set out in *Graham v. Connor*, 490 U.S. 386, 395 (1989), in part, because the actions taken by Shoultz and the other individual present were not threatening to the officer before the officer began to use force. *Shoultz v. State*, 735 N.E.2d 818, 823-24 (Ind. Ct. App. 2000). In effect, the officer began using force before Shoultz resisted arrest, within the meaning of the statute.

Like the plaintiff in *Helman*, Ocasio pleaded guilty to resisting law enforcement under Indiana Code § 35-44-3-3. And, like the plaintiff in *Helman*, Ocasio pleaded guilty to the specific fact that the officer was "lawfully engaged in the execution of his duties as an officer." (Def. Mot., Exh. A.f. (Information)). But, allowing Ocasio to go forward on his excessive force claim for the time period beginning once Ocasio started resisting and Turner then began using force is consistent with *Evans*, *VanGilder*, and *Gilbert* as well as the more recent decision in *Helman*.

The Court starts with the specific language of the charge of resisting law enforcement to which Ocasio pleaded guilty:

> Manuel Ocasio Jr. did knowingly, intentionally by force, resist, obstruct or interfere with a law enforcement officer by refusing to comply with orders to exit the truck, attempted to lock himself in his cab, and attempted to retreat into his sleeper berth for unknown means while said officer was lawfully engaged in the execution of his duties as an officer, contrary to section 35-44-3-3(1) of the Indiana Code.

(Def. Br., Exh. A.f (p.7)). Accordingly, based on the plea agreement, Turner was lawfully engaged in his duties as an officer through the events described in that paragraph, which led to Turner's use of force to arrest Ocasio. Like in *Evans*, Ocasio cannot now argue that he did not resist Turner by refusing to comply with the order to exit the truck, attempting to lock himself in the cab, or attempting to retreat back into the cab's sleeper compartment. He cannot contradict these and the other facts set forth in the Information supporting his conviction for resisting law enforcement. Thus, Ocasio cannot now argue that Turner was not lawfully engaged in the exercise of his duties up to the point that Ocasio began resisting Turner in the cab but prior to Turner's use of force. To do so would contradict an element of the crime of resisting law enforcement and would invalidate the conviction.

However, his guilty plea does not preclude Ocasio from arguing in this § 1983 suit that, once Ocasio resisted Turner by those actions, the force used by Turner during and after the arrest was unreasonable and excessive. *Hardrick*, 522 F.3d at 763-64 (recognizing that *Heck* does not apply to a § 1983 claim for excessive force that alleges the continued use of force *after* the criminal defendant's resistance has stopped (citing *Van Gilder*, 435 F.3d at 692 ("Were we to uphold the application of *Heck* in this case, it would imply that once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while forfeiting the right to sue for damages."))). Ocasio can argue that Turner's use of the chemical weapon spray against him was "unnecessary physical force to effect the arrest." (Pl. Br. 9). He can also argue that his actions, but not inconsistent with those set out in the Information, did not merit the use of the chemical weapon spray. Indeed, the facts that Ocasio may offer to prove this claim are circumscribed by the facts set out in the background and the charging paragraph of the Information, which underpin his plea and conviction.

This holding is consistent with *Helman*, despite the contrary outcome. In *Helman*, the court was faced with a clear sequence of events concerning the use of deadly force that could have unfolded in only one of two ways–one that supported Helman's conviction or the one he asserted in his § 1983 claim that would have invalidated his conviction. In Helman, the inquiry as to whether the officers were "lawfully engaged" looked at the actions of the officers up to the time that Helman pulled his gun and fired at the officers. If, as alleged in his § 1983 case, Helman drew his weapon only after the officers began firing at him, then the officers' use of force at the time Helman pulled his gun could not have been reasonable, which means they would not have been "lawfully engaged"

and Helman could not have been convicted of resisting law enforcement.[11] In this case, whether Turner was "lawfully engaged" prior to Ocasio's resistence does not entail an analysis of any use of force by Turner because he did not use any force prior to Ocasio's resistence. To that extent, Ocasio is barred by *Heck* from asserting that Turner used excessive force prior to Ocasio's resistence.

Finally, Ocasio argues in his brief that he has alleged two distinct acts of excessive force, one of which occurred after his arrest, citing paragraph 11 of his Complaint. Again, paragraph 11 provides: "Without any legal basis, Defendant Turner sprayed the Plaintiff with his chemical weapon spray." Compl. ¶ 11. It appears that Ocasio may be arguing that Turner sprayed him with the chemical spray after the arrest occurred. There are no other references in the Complaint to any other use of force by Turner after Ocasio was arrested.

In his reply brief, Turner argues that the facts in the Information establish the reasonableness of Turner's use of the pepper spray, namely Ocasio's refusal to get out of the cab. Turner argues that he was justified in using pepper spray on this basis alone and that his actions were restrained because he did not use the pepper spray until Ocasio began striking him. First, because Turner did not raise this argument in his opening motion, it is not properly before the Court. Second, the argument is premature. Turner can make these arguments at summary judgment or at trial once the parties have had an opportunity to develop the facts and law. Notably, both cases cited by Turner for the finding that the use of pepper spray was reasonable were summary judgment rulings. *See Brooks v. City of Aurora*, 653 F.3d 478, 486 (7th Cir. 2011) (noting that courts have found that the

_____

[11] Under the Fourth Amendment, an officer is only justified in using deadly force if *faced* with deadly force. *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000)).

use of pepper spray against a suspect who is physically resisting arrest is a reasonable response

(citing *Vinyard v. Wilson*, 311 F.3d 1340, 1348 & n.12 (11th Cir. 2002)); *Padula v. Leimbach*, 656

F.3d 595, 603 (7th Cir. 2011).

Accordingly, the Court denies the Motion for Judgment on the Pleadings as to Ocasio's

Fourth Amendment excessive force claim (Count II) with the limitations set forth in this Opinion.

*4.    Malicious Prosecution*

In the Facts section of the Complaint, Ocasio alleges: "Defendant Turner maliciously and

without probable cause instituted or caused to be instituted charges against Plaintiff for aggravated

battery;" "Defendant Turner improperly influenced the prosecutors to charge Plaintiff with

aggravated battery;" "Defendant Turner made knowing misstatements to prosecutors in connection

with the aggravated battery charge;" "Defendant Turner testified untruthfully at Plaintiff's criminal

trial;" and "As a direct and proximate consequence of the unlawful actions of Defendant Turner,

Plaintiff was injured including loss of freedom, humiliation, embarrassment, the deprivation of his

constitutional rights and his dignity, lost time, attorneys' fees, physical injuries, including the eyes,

and emotional distress." Compl. ¶¶ 13-16, 18. Count III then asserts a claim of malicious prosecution

under § 1983, alleging that Turner knowingly and maliciously prosecuted Ocasio on false charges

for which he knew there was no probable cause and that he performed these actions while on duty

and while acting within the scope of his employment.

"[I]ndividuals do not have a federal right not to be summoned into court and prosecuted

without probable cause." *Serino v. Hensley*, 735 F.3d 588, 592 (7th Cir. 2013). Thus, the Seventh

Circuit Court of Appeals has emphasized that "'[f]ederal courts are rarely the appropriate forum for

malicious prosecution claims.'" *Id.* (quoting *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir.

2011)). A federal constitutional claim of malicious prosecution under § 1983 is actionable *only* when no adequate state-law remedy exists. *Newsome v. McCabe,* 256 F.3d 747, 750-51 (7th Cir. 2001) (discussing *Albright v. Oliver*, 510 U.S. 266 (1994)). Such is the case in Indiana, because under Indiana Code § 34-13-3-3(6), the Indiana legislature granted absolute immunity to state officers and employees acting within the scope of their employment for the "initiation of a judicial or an administrative proceeding." *See Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013). "'[W]hen brought under federal law, the claim referred to colloquially and under state common law as 'malicious prosecution' is typically based on the deprivation of liberty without due process of law, in violation of the Fourteenth Amendment, and may seek redress through § 1983.'" *Katz-Crank v. Haskett*, 1:13-CV-159, 2014 WL 1324283, at *7 (S.D. Ind. Mar. 31, 2014) (quoting *Freeman v. City of Crown Point,* No. 2:13-CV-059, 2014 WL 545511, at *6 (N.D. Ind. Feb.11, 2014)).

Ocasio's malicious prosecution claim is based solely on the charge of battery on law enforcement officer. Ocasio alleges in paragraph 17 of his Complaint that "[t]he [battery on law enforcement officer] charge terminated by way of a not guilty verdict in Plaintiff's favor," Compl. ¶ 17, and asserts in his response brief that he was found not guilty by the jury on some of the claims brought against him. However, no jury verdict was entered in Ocasio's favor, and any conclusions by the jury were neither accepted by the state court judge nor reduced to judgment. *See* Ind. Code § 35-38-1-1. Rather, the charge of battery on a law enforcement officer as well as the traffic infraction charges were dismissed as part of the plea agreement, and the state court entered judgment of conviction on the plea of guilty. *See id.*

As argued by Turner, Ocasio's malicious prosecution claim must be dismissed because the action did not terminate in Ocasio's favor. In *Heck*, the Supreme Court recognized that "[o]ne

element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." 512 U.S. at 484. Similarly in *Julian v. Hanna*, the Seventh Circuit Court of Appeals recognized that "[u]nder both state and federal law a malicious prosecution claim does not accrue until the criminal proceeding that gave rise to it ends in the claimant's favor." 732 F.3d at 845 (citing *Heck*, 512 U.S. at 484; *Brooks*, 578 F.3d at 579; *Butt v. McEvoy*, 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996)); *Duvall v. Kroger Co.*, 549 N.E.2d 403, 406 (Ind. Ct. App. 1990) ("If a prosecution is terminated pursuant to a compromise or entered voluntarily by the accused, the termination is not favorable." (citing W. Page Keeton, § 119 *Prosser and Keeton on the Law of Torts* (5th Ed.) (1984); *Davis v. Chubb/Pacific Indemnity Group, et al.*, 493 F. Supp. 89, 91 (E.D. Pa. 1980); *Singleton v. City of New York*, 632 F.2d 185, 193 (N.Y. 1980), *cert. denied* (1981), 450 U.S. 920; *Restatement of Torts* (2d) § 660))).[12] Ocasio does not dispute in his response brief that this is a required element of a malicious prosecution claim.

Accordingly, the Court grants the Motion for Judgment on the Pleadings as to the claim of malicious prosecution. The Court does not reach the question of whether the malicious prosecution claim is barred by *Heck*. Nor does the Court consider whether Ocasio has otherwise pleaded a cognizable federal claim of malicious prosecution by alleging something that amounts to a constitutional violation. *See Serino*, 735 F.3d at 593; *Katz-Crank*, 2014 WL 1324283, at *7-8 (finding that the plaintiff had failed to allege a valid constitutional violation); *Freeman*, 2014 WL 545511, at *6 ("Courts have recognized that the harm caused by malicious prosecutions may

---

[12] Under Indiana law, there are four elements for a claim of malicious prosecution: "(1) the defendant [ ] instituted or caused to be instituted an action against the plaintiff [ ]; (2) the defendant acted with malice in doing so; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Bugariu v. Town of St. John, Ind.*, 2:13-CV-355, 2014 WL 958025, at *3 (N.D. Ind. Mar. 12, 2014) (quoting *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)).

implicate liberty and property interests, as contemplated by the Due Process Clause." (citing *Serino*, 735 F.3d at 594-95)); *Mudd v. Lyon*, 1:12-CV-164, 2014 WL 218443, at \*9-11 (N.D. Ind. Jan. 17, 2014) (finding, on summary judgment, that the plaintiff had failed to identify evidence of malice). The Court orders that the claim for malicious prosecution (Count III) is dismissed without prejudice.

5.    *State Law Claims*

Ocasio's Complaint states in the Introduction that "[t]his action also contains some attendant state claims." Compl. ¶ 1. Yet, the Complaint contains four denominated counts, all of which are brought under § 1983 and none of which identify any state law basis for the claim. In the Complaint, Ocasio avers that Turner is sued in his individual capacity and alleges that Turner was acting within the scope of his employment at all times relevant to the allegations of the Complaint. *See* Compl. ¶¶ 5, 6. Turner argues that Ocasio's state claims are barred under the Indiana Tort Claims Act ("ITCA"), because Ocasio can only bring these claims against the government agency and not Turner individually. Ocasio offers no response to this argument.

"The ITCA limits when a plaintiff may sue a governmental employee personally." *Wilson v. Isaacs*, 917 N.E.2d 1251, 1257 (Ind. Ct. App. 2009) (citing *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003)), summarily aff'd in part, 929 N.E.2d 200, 204 (Ind. 2010)). If a plaintiff alleges that an employee was acting within the scope of his employment, as Ocasio does in his Complaint, the plaintiff is barred from bringing a state law tort claim against the employee personally unless the governmental entity answers that the employee was acting outside the scope of his employment. *See* Ind. Code §§ 34-13-3-5(b), (c)(2);[13] *see also Townsend v. Wilson*, No. 1:13-

---

[13] Indiana Code § 34-13-3-5(b) provides, in relevant part:
A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the

CV-315, 2014 WL 293808, at *1 (N.D. Ind. Jan. 27, 2014) (citing *Wilson-El v. Majors*, No. 1:12-CV-638, 2012 WL 5929983, at *3 (S.D. Ind. Nov. 27, 2012)); *Long v. Barrett,* 818 N.E.2d 18, 24 (Ind. Ct. App. 2004), *trans. denied.* The State of Indiana has not done so. Thus, the Court grants the Motion for Judgment on the Pleadings as to Ocasio's state law claims against Turner.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Defendant's Motion for Judgment on the Pleadings [DE 15]. The Court **DISMISSES without prejudice** Ocasio's claims against Turner under § 1983 for false imprisonment/false arrest (Count I), malicious prosecution (Count III), and illegal search and seizure (Count IV), as well as those claims brought under Indiana state law.

Ocasio's § 1983 Fourth Amendment excessive force claim against Turner (Count II) **REMAINS PENDING** as set forth in this Opinion.

The Court **LIFTS** the stay of discovery.

---

complaint and sue the employee personally.
Ind. Code § 34-13-3-5(b). In addition,
> [a] lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:
> (1) criminal;
> (2) clearly outside the scope of the employee's employment;
> (3) malicious;
> (4) willful and wanton; or
> (5) calculated to benefit the employee personally.
> The complaint must contain a reasonable factual basis supporting the allegations.

*Id*. at § 34-13-3-5(c). Although Ocasio alleges in the Complaint that Turner acted "maliciously," he does so only in paragraph 13 in the context of the claim of malicious prosecution, and, as noted above, Indiana state law grants absolute immunity to state officers and employees acting within the scope of their employment for the "initiation of a judicial or an administrative proceeding." *See Julian v. Hanna*, 732 F.3d 842, 846 (7th Cir. 2013) (citing Indiana Code § 34-13-3-3(6)).

SO ORDERED this 14th day of May, 2014.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record